Good morning, Your Honors, and may it please the Court, my name is Belinda Lee and I represent Appellant Cross-Appley, Hannstar Display Corporation. If the questioning permits, I'd like to reserve three minutes of my time for rebuttal. Your Honors, we respectfully request that you reverse the judgment below. There are two independent grounds for doing so. First, the Best Buy plaintiffs failed to prove at Second, there is no evidence at trial, and this is undisputed, there is no evidence at trial about the individual injuries incurred by each of the six individual plaintiff entities. Well, there's plenty of evidence about the parent company, which was one of the plaintiffs. In fact, it looked like all the evidence was about the parent company. So why wouldn't the solution be to reverse only as to the individuals? I mean, how would that affect anything? Sure. And these two issues actually go hand-in-hand, Your Honor, because there was not evidence of which entity purchased the products at issue. And as a question Why does it matter? Well, it does because under the FTIA, you have to be able to trace where these purchases are coming from to see that you've satisfied the requirements of the FTIA. I thought it was pretty clear that it was the parent company, which was one of the plaintiffs, in which case it's perfectly sufficient as to them. Well, Your Honor, the testimony at trial was just that $32 billion was purchased in aggregate by Best Buy, without any specification of who that was. There was testimony that these numbers came from a database that contained purchases by all of the Best Buy entities. And in fact, when this case was originally filed, one of the plaintiffs was a Best Buy China entity, a company that was incorporated in Bermuda and located in China. That's at ER 809. When the amended complaint was filed, that Best Buy China plaintiff disappeared from the case. But the problem is that we don't know who these purchases in this aggregated database, we don't know who actually made these purchases. And if the purchases were made abroad by that Best Buy China entity, then you don't satisfy the FTIA, because they're purchases from a foreign seller to a foreign buyer. I thought that Wendy Fritz, I think that's who it was, testified that it was the parent that Best Buy in the U.S. did the purchasing, or some of the purchasing sufficient to be proving damages. So, Your Honor, I think it's helpful to look at the Seventh Circuit's recent decision in Motorola. No, no, that's a factual question. Did Wendy Fritz testify that the U.S. company Best Buy made purchases? It was just Best Buy, without any specification. Right, which sounds like the parent company. But she did so testify, right? Not about China. Well, there was no specificity as to who she was referring to. It was just Best Buy. And, Your Honor, the reason I brought up Motorola is because I think it's helpful to look at how the Seventh Circuit approached that issue. I think Motorola is distinguishable, though, because they're one of the companies that did the purchasing.  And I think that's helpful to look at how the Seventh Circuit approached that issue. The non-conspirator foreign subsidiaries were the ones who purchased the product and were injured. And here, Best Buy purchased from co-conspirators of Hanstar. Well, actually, Best Buy purchased. And there's, again, there's not very much specific information about this, because if you remember at trial, Best Buy spent the majority of the trial trying to prove importation through Toshiba Corporation and purchases from Toshiba. Ultimately, the jury found that Toshiba was not a member of the conspiracy, and so all of that evidence goes out the window for what we're talking about today. But we have the other co-conspirators, I mean, all of the ones that settled. So obviously, we have the co-conspirators doing the importation. So it's what you have is the co-conspirators are the panels companies, right? The conspiracy that is at issue, and there's no dispute about this, the conspiracy that the jury found and was asked about in question 2 of the special verdict form. It's just the panels conspiracy. Best Buy may have purchased from other subsidiaries owned by the same corporate conglomerate, but they didn't buy from the conspiracy, because the conspiracy itself was panels. So you're making the distinction that because you have the – it's a component versus the panel, then it's an indirect – The distinction is the component versus the finished product. Well, we have kind of an – it seems like there aren't other cases that I'm aware of that deal with precisely our question here, because it's clear that import commerce includes or would have included the sale of these components directly into the United States if Hanstar had just shipped them off to Joe Doakes in Nebraska, that would be import commerce. And at the other end of the spectrum, if XYZ in China had bought them, it was not part of the conspiracy, just was a buyer manufactured a product and that was imported into the U.S., that wouldn't be covered. But what's weird here, it's sort of in between, because Hanstar never sold directly into the United States, but some of its co-conspirators, it seems to me, did place these components into more finished products that were in turn sent to the United States. So it's kind of halfway in between. So some of the co-conspirators were manufacturers of the finished product as well as a component. And are you aware of any cases that decide that precise issue? No, Your Honor, I'm not. What about the Second Circuit and Third Circuit cases? Sure, Your Honor. The Second Circuit case, Crewman, and the Third Circuit cases, I think you're probably referring to Animal Science, Carpet Group, and Toracento. So those cases, the, very much those cases talk about how, and I should mention, by the way, we're just talking about how to define import commerce for purposes of the import commerce exclusion. But those cases talk about the need to focus on the defendant's conduct rather than the plaintiff's conduct. And then they also talk about looking at what market the conduct is directed at. These cases, though, are still consistent with this Court's decision in U.S. v. Shong, the criminal, the appeal of the criminal conviction of the AUO Optronics, as well as Motorola, the Seventh Circuit's decision in Motorola. Because those cases from the very beginning, the Third Circuit, for example, in Toracento in 2002, noted that import commerce generally denotes a product or perhaps a service that has been brought into the U.S. from abroad. That's at Jump Site 303 in Toracento. The Third Circuit cases, though, their FDAIA cases have not been kind of the standard price-fixing cases that we're talking about. The Third Circuit's FDAIA cases, like Carpet Group, for example, the wrongful conduct there was not price-fixing of an actual good that's sold. The wrongful conduct was a conspiracy to monopolize the import market for Oriental rugs. And so in that instance, the wrongful conduct itself was trying to prevent import commerce, to make sure that retailers weren't able to actually import Oriental rugs from outside the U.S. And so that's why the Third Circuit said, don't get hung up on this notion of physical importation of goods. You can have import commerce or you can satisfy the import commerce exclusion if the wrongful conduct you're looking to regulate is directed at the import market. Does that answer your question, Judge Wardlaw? I don't know if I quite see the cases the same way that you do, but it does its best to get it answered. I have a question as to the conduct in this particular case that deals with the targeting theory. Right. So what was the, as opposed to the cases you talked about, the carpet case and the other one was the animal size products case, it seems like in those cases there was, maybe not the animal science, but the we swing case, suing case that talked about, shown, yes, thank you, that talked about in those cases they actually had negotiations in the United States. They had direct sales to the United States. And so I'm having trouble grasping what the targeting actions were in this case, what targeting actions did Hanstar take that targeted the United States specifically? Your Honour, we think that there is insufficient evidence of that here. If you look at the one piece of evidence that is cited in the Best Buy plaintiff's brief on this, they say that there was evidence of email communications that demonstrated that the cartel targeted the US. If you look at that one email that they cite, and I think it's SER 109, it's an internal email by LG talking about a meeting that they held with Toshiba. And remember, again, Toshiba was found to not have been a participant in the conspiracy. But all it says is, the email notes that the Toshiba person said its sales were slowing in the US. That's it. That's the only evidence that they've cited in support of targeting of the US. Well, what about... So one of the things I thought that the district court relied on was the factual basis in the criminal plea agreement. Specifically, it's at... Well, it's paragraph 4C, and this is what Hanstar agreed was the factual basis for its criminal liability, that during the relevant period, the defendant, through his officer's employees, participated in a conspiracy with major TFT LCD producers, the primary purpose of which was to fix the price of certain TFT LCDs sold in the United States and elsewhere. Right. So, Your Honor, that's true. The district court did rely on the guilty plea, but it's important to note that the guilty plea addressed only Hanstar's sales of TFT LCD panels. The Best Buy plaintiffs did not buy TFT LCD panels. No, Hanstar sold those panels, but the ultimate goal of the conspiracy, and apparently some of the conspirators actually manufactured, some of the co-conspirators manufactured finished products using those panels, which were the subject of the price-fixing agreement, and sold them to the United States at inflated prices, and that's exactly what was what Hanstar agreed to in its criminal plea agreement. But it doesn't specify what customers and the Best Buy plaintiffs need to demonstrate that their claims... I'm sorry. You go ahead. I was just going to say, but don't we know it was the co-conspirators and don't we know who the co-conspirators were because many of them are the very same co-defendants in this case with which Best Buy reached the settlement agreements for over hundreds of millions of dollars? We know who the other co-defendants were. Right. And what they did, what they manufactured, and what Best Buy bought from them. I think the way to look at targeting in this scenario, though, is that we know what the conspiracy targeted. The conspiracy targeted the customers who purchased panels, and the guilty plea doesn't specify what customers it was, whether in the U.S. or elsewhere. And the Best Buy plaintiffs have the burden of tracing their purchases back to either import commerce that puts them outside the FTAIA, and if it doesn't trace to import commerce, then they have to satisfy the domestic effects exception of the FTAIA. That's what the Seventh Circuit did in Motorola. In Motorola. Right. It depended on what happened to the components as to whether there was Sherman Act liability or not. Right. They also agreed that acts in furtherance of this conspiracy were carried out within the Northern District of California. TFT-LCD affected by this conspiracy were sold by one or more of the conspirators to customers in this district. Right, Your Honor. So Henstar's admitting the elements of the targeting theory. Now, I grant you that so far, only the Second and Third Circuit seem to have accepted the targeting theory. What I would say, Your Honor, is they accept the targeting theory in cases where the conduct does not involve actual sales of goods. If you applied the targeting theory here, the target of the conspiracy was the panels market, and that was outside the U.S. And the other issue, in response to one of your questions, Judge Wardlaw, I think we need to focus on Best Buy and their ability to trace their claims back to either import commerce, and if not import commerce, then satisfy the domestic effects exception. And we know in this instance, actually, that the jury, in answering no to question 5 of the special verdict form, found that Best Buy plaintiffs did not satisfy the domestic effects exception. Right, but we're not talking about that exception. Understood, but I think perhaps inarticulately, what I was trying to say is that there is a difference for purposes of the criminal case, what the Department of Justice has to prove and what it can use as evidence of import commerce. In that case, the DOJ, and frankly, in class cases, in class actions, the plaintiffs in a class action, they just need to prove import commerce to someone in the U.S. And that's sufficient for them for proving import commerce. But when we have Best Buy here, who is an opt-out plaintiff, who opted out of these classes and is suing on its own behalf to recover for purchases it made, it's not sufficient to demonstrate import commerce to anyone in the U.S. They need to demonstrate that their own purchases trace back to import commerce. And if they can't do that, then they need to satisfy the domestic effects exception. It's not like they get, you know, foreign companies who do this, you know, are just immune from U.S. law. You just need to be able to demonstrate that you can satisfy the domestic effects exception. Didn't we, I mean, I think we at least, in the Shun case, contemplated this theory that we didn't go there. We didn't go all the way there because apparently we didn't have to. Right. But Note 8 says, describes the Third Circuit opinion saying, the Third Circuit also addressed the import trade exclusion holding that applies to importers and to defendants whose, quote, conduct is directed at a U.S. import market even if the defendants did not engage in importation of products into the United States. That's the situation here, right? Well, it's, so, you're, I'm not sure I follow your question. The... I'm saying, so that's animal sciences. So we're saying, in Shun, which I thought was a very well-written decision, they didn't need to go there to go to the targeting theory of import expert, but they suggested that it is an avenue that's viable. Right. They didn't answer whether, whether, whether they were going to subscribe to the targeting theory or not. And here, Your Honors, I think we don't need to get to that again because it's clear what the commerce at issue was. It was Honstar's sale of, of TFT LCD panels, price-fixed panels outside of the U.S. in Asia. That's non-import foreign act, uh, commerce. And so that would, that doesn't bring it in within the import commerce exclusion, but then you just, you look at it under the domestic effects exception. And in this instance, the jury said they didn't find that. Did you wish to save a little rebuttal time? I, I do, Your Honor, if that's all right. Thank you. Thank you. May it please the court. Good morning, Your Honors. My name is Catherine Barrett Wick. I'm from Robbins Kaplan LLP, and I'm here today on behalf of the best by Apple East and Cross Appellants. The panel's questions to Ms. Lee as to the FTAA were, um, particularly on point, and, uh, you noted many of the portions of the record, which I want to emphasize in my time, which is that there was substantial evidence in the record that Honstar, as a co-conspirator in this TFT LCD conspiracy, participated in a conspiracy that engaged in import commerce. And that means the FTAA does not apply. We see the evidence in the record as to, uh, Honstar, Hanstar, excuse me's, uh, involvement in a conspiracy that involved import commerce in the criminal plea and the factual basis for the criminal... Well, except the, the criminal... In terms of the civil liability under, under that theory, um, doesn't the conduct have to be specifically the conduct that gives rise to your injury? I think that is correct, but that is not limited to Han... Okay, so in the, uh, in the criminal plea deal, there is nothing specific to best by, is there? No, of course not, Your Honor. What is in the criminal plea is the background of the purpose of the TFT LCD conspiracy, which, which was to target and raise the prices of panels to be imported in the U.S. And because Best Buy has brought forth sufficient evidence at trial that Best Buy purchased directly from the co-conspirators to Hanstar, uh, that, that is all we need to show. Well, that's the question in front of us, I guess. And I think we may have some different, all of us different readings of these cases. I, and under Shung, I'm not sure if that's the right pronunciation, but I think we're all talking about the 2015 case from this court. Um, and I'm looking at page 756, where we said the defendants claimed that the transactions did not target the United States. Targeting is not a legal element for import trade under the Sherman Act. So, um, I'm not sure where targeting comes from in this circuit and I'm not sure whether we're free to use that as a, as an element of import commerce. I, I would look to some other language in that same Shung opinion, Your Honor, um, which is, I think, at, uh, 1089, where this panel, excuse me, this court looked at law from both the Seventh and the Sixth Circuit, uh, to conclude that, you know, transactions that are directly between a U.S. purchaser plaintiff and defendant cartel members, when those defendant cartel members, uh, were involved in the importation of fixed-priced goods, that is import commerce as defined by MNCAM. The Sixth Circuit says so too, or I should say this court says about the Sixth Circuit's definition of import commerce, that import commerce includes transactions between foreign defendant producers of TFT LCDs and purchasers located in the United States. And that is exactly what we have here. Okay, so let's, let's just focus on exactly what we have here. And so what we have here is, well, I guess the question I have, and maybe we have the, um, conspiracy, and we have the conspiracy to fix the prices of the TFT LCD panels, which are then incorporate, incorporated into finished products, some by non-conspirator manufacturers, and some by conspirator manufacturers. And the linchpin for liability, civil liability in this case is the fact that, um, Best Buy purchased from a conspirator. If it had not purchased from a conspirator, then it would be more Motorola, right? Well, not for the Let's not, let's forget about distinguishing the state, because it really doesn't make any difference. Okay, well, we do have state I know you have that argument, but I'm trying to focus on what, what's the, the different basis for liability in this case, and it, it hangs solely on the fact that Best Buy purchased from a co-conspirator who actually manufactured the finished product using the price fix good and sold it to Best Buy in the United States, right? Yes, because the Motorola plaintiff was not the entity that had made the purchases. It was the Motorola plaintiff's foreign subsidiary. Right. And here, Best Buy did make the purchases. And what's the proof of that? Where's the evidence that Best Buy in the United States made the purchases? Because that's a point that Ms. Lee makes. So, it comes in a couple different places, but the primary evidence comes from the testimony of Ms. Wendy Fritz, which she was the key fact witness from Best Buy about the various entities from whom Best Buy had made purchases, including many of the co-conspirators. Well, Ms. Lee's point, and I think perhaps Judge Wardlaw's question is directed to this. It was clear that she testified generically that Best Buy bought a lot of stuff that's relevant. But the question is whether she was specific about what part of Best Buy, what subsidiary, whether it was a foreign subsidiary, the parent company, a particular United States subsidiary, who was it, and is their testimony that is that specific? The testimony is that all six entities that are the plaintiffs in the second amended complaint, all of which are U.S. based. And you can see that in the second excerpts of record. Best Buy China is not a plaintiff in this case. And any purchases made by Best Buy China were not included in the data that was gathered by Best Buy and that was purchased excuse me, that was reviewed and became the basis of... Is that clear in the record from Ms. Fritz's testimony? Yes. She talks about how all the data was for the six plaintiff entities was all in a unified database. Was that, were all the six entities within Territory 2? They were all in the United States. Well, Territory 2 is the store Fritz was responsible for the stores in Territory 2 and it was 150 stores and the territory was Wisconsin to Idaho, Salt Lake to Missouri. Are those the stores that were the purchasers? No. All of the, because Best Buy's purchases are made out of its headquarters in Minneapolis where all the six entities are based. It was not limited to that sort of upper Midwest. That was her personal job. Why isn't Hanstar's argument then valid about sort of excess plaintiffs if every bit of the evidence is aggregated for sort of the Best Buy parent company, why are the individual stores or individual subsidiaries have they proved their own damages individually? Does it make any difference? There is no allegation from Hanstar that there was any double counting. It doesn't make a difference figuring out which of the six entities suffered which degree of the injury. All that we need to show and what we did prove is that each individual entity was injured because it was data from the collective entity and these were the six entities located in the United States that had purchased LCD TFT panels or finished price products. From the conspirators. Okay, so where's the evidence of that? That they actually purchased from and tell me the name of the person you know, the co-conspirator from whom they purchased. I don't know if I have specific pin sites from every particular where the testimony came in for each particular purchaser. Let me find it. I know it's something that was mentioned in the post-trial motion order. So Best Buy purchased directly from Samsung, LG, Hitachi and Sharp and those entities manufactured both LCD panels and finished products. And were those entities co-conspirators? They were indeed. Yes, they were. And there's evidence of that in the record? There is. There is testimony from Mr. Gill who is a forensic accountant who used to be with the FBI. He analyzed the criminal pleas and all the co-conspirator entities and he provided summary testimony under Rule 106 outlining all the different entities. And then testimony that Best Buy had purchased from those entities came from both Ms. Fritz and then also from Best Buy's expert witness, Mr. Bernheim who analyzed all Best Buy's purchases and also the impact of this cartel on the prices. What was the evidence that it was Best Buy in the U.S. and not Best Buy in another foreign area that made these purchases? Because they weren't entities, they weren't plaintiffs, so they weren't included in the damages pull of data of relevant purchases. But I think Hanstar's argument is you have to prove obviously that Best Buy USA, the parent company, made the purchases because if you didn't, then the act wouldn't apply. That is what data was pulled and that is the data that was the basis of all of the experts' analysis including Hanstar's. And I would like to note I was a little surprised to hear this argument about Best Buy China because it's not something that was raised by Hanstar below because they are not a plaintiff in this case. And there was no their data was not relevant to the damages analysis. But the fact that someone's not a plaintiff in a case doesn't make it evidence that they didn't participate or that they weren't the plaintiff in the case because they wouldn't have any standing. The act wouldn't apply, right? If the purchases have been made foreign overseas, yes, that would be Motorola. What you're saying is that there's no evidence as to what, if anything, Best Buy China purchased. They may have purchased something, but that wouldn't be a basis for price fixing action. That's correct. And there's zero evidence in this record that any damages numbers or data analyzed that was the basis of the damages numbers had anything to do with Best Buy China. Did Hanstar put on any evidence that any of these products were purchased by Best Buy China in the record? Did Hanstar use that as a defense at trial? I am not aware that they did. No, I'm not aware of that. No. I was surprised to hear about that today too, actually. Interesting argument. Maybe a good defense. If it had been Best Buy China who did the purchasing and not Best Buy U.S., you would have thought Hanstar would have put that in the record below. I would also like to point out that the jury's answers to questions three and four are what provide evidence that the jury found that this involved import commerce. So the jury answered that yes, that the conspiracy involved TFC panels and finished products that were imported into the U.S. and that these panels and the importation of these finished products had substantial intended effects in the U.S. But it is, am I correct in understanding that only the co-conspirators used these components in imported to the U.S.? That Hanstar did not manufacture any completed products that were directly imported? That is correct. I believe that that is correct. But I would like to point out that one of Hanstar's strategies in this defense in a couple of different argumentative strains is to sort of take a myopic approach to what did Hanstar do? When you're in a conspiracy and you've pleaded guilty to being in a conspiracy, it's not just about what Hanstar did. It's about what everyone in the conspiracy did. And because other members of the conspiracy who both pleaded guilty and as you noted, who settled with Best Buy admitted that they did import those finished products and those were purchased directly by Best Buy. So that's what we need for the import commerce. Not exception, but for the Sherman Act to apply unimpeded by the FDA. If we were to agree with you, are we creating a conflict with the Seventh Circuit and Motorola? You're not. Because of what we discussed previously, that the plaintiff in Motorola was not the entity that had made the purchase. It was the parent company of a foreign subsidiary that had made those purchases overseas. We did not have the language that this court used in Shong to describe what is import commerce. That the plaintiff purchased directly from co-conspirators that brought those goods into the United States. Here's a concern that I have that maybe you could address and it is kind of the implications of your argument and whether those implications are really what Congress had in mind. And let me give you an example that I can't take credit for because this was an example that was provided to me, but it's one that worries me. Let's suppose that in Japan there is a conspiracy to fix the prices of gas caps for cars and they ought to be worth a dollar but because of the conspiracy they actually cost $10. And so the company at issue just manufactures gas caps. They don't make cars. But some of their co-conspirators actually make cars which are then imported into the US and under your theory this $10 part with thousands of other components and a $50,000 car all become subject then to antitrust liability. Is that it just seems the tail wagging the dog potentially and that concerns me. Well I think that is not. That is definitely not this case because... But that's the implication of your argument because it's identical to what happened here it's just that the part is little and the finished product is big in my example. It's otherwise identical. So in your hypothetical the gas cap manufacturer had been in a conspiracy... Absolutely same thing. Everything's the same as in this case except that it's a tiny part and a really big finished product and so the actual effect ultimately is quite tiny. I think analysis would start with was there an injury to the plaintiff's case? Yes, worth a half a cent. So I guess it's a theoretical question really is that what Congress intended to encompass within import commerce or not? It's a good question because it's drawing the line. As Footnote 8 said what's the outer bounds of this type of liability? I don't know what the outer bound is either but there has to be some kind of line drawing and it has to have something to do with Congressional intent. I agree. I don't think because the facts of this case and the FTAIA issues are identical to shown because it's the same conspiracy But in all shown they went through under their targeting theory they went through and had a lot more actions to show targeting than what we have here. Well we have as Judge Wardlaw noted we have paragraph 4 and multiple provisions of paragraph 4 in Hanstar's They use the language purpose that the purpose of the conspiracy was to target sorry not to target was to fix the price of panels to import into the U.S. So there's ample language in that plea which was all brought to the jury and was a substantial basis for the verdict. I'm sorry. I finished your answer. I thought you were done. I apologize. No that's fine. What we have here that we didn't have in that case because it was a trial there wasn't a plea we have this detailed factual basis that where in Hanstar admitted that that the purpose of its involvement in the conspiracy and the purpose of the conspiracy was to fix prices to import into the U.S. I thought there was also evidence in shown and again I may be wrong there's a lot of material floating around in my head that the component parts were directly imported into the United States not solely through the finished products and that's the distinction that's what makes this case different in my view so am I wrong about the facts of shown? No I think you're correct that those criminal defendants were prosecuted for their importation of the panels but here we have co-conspirators importing finished products and that's the basis. But it's all about finished products the component parts in this case none of the co-conspirators as I understand the facts exported into the United States imported into the United States the components themselves alone without being incorporated into a finished product I'm not certain I think that is correct but those same co-conspirators incorporated themselves those panels into their finished products so the question is then whether what matters is the component becoming part of something else or not that really is the theoretical question that we're faced with here whether that makes any difference If I may say 35 seconds on our pass through defense I would just point the court to the Minnesota Supreme Court's language in Philip Morris where the court analyzed a challenge that was based on standing which also relates to injury and stated unequivocally that the court rejected a pass through defense because the injury happened and the actual damage happened the moment that that plaintiff overpaid for a price to fix good and so I'd ask you to look in deciding that issue look at the conclusion of the court below and how it erroneously defined actual damages under the Minnesota Antitrust Act and look how the Minnesota Supreme Court defined actual damage is not allowing an analysis of any pass through and I'd ask then that you affirm the judgment in favor of Best Buy on the Sherman Act claim and reverse and remand for consideration of the indirect purchase damages free from this defense that was clearly not something that the Minnesota Supreme Court believes exists under Minnesota law. Thank you counsel. Ms. Lee you have some rebuttal time. Thank you your honor if I can start with Judge Graber your hypothetical that conduct and the example of a gas cap sold abroad incorporated into a large car that's then imported into the U.S. that conduct is what the domestic effects exception is intended to address and I worry that what we're doing here is enlarging the import commerce exclusion to the point that we're basically eliminating the domestic effects exception and the legislative history behind the FDAIA we cite this in footnote 2 of our the third brief response and reply brief the FDAIA legislative history makes clear that we need to give a narrow construction to the import commerce exclusion or we will just do away with the whole point of the FDAIA the other point I'd like to try and come back to is this idea that the Best Buy plaintiffs imported finished products from co-conspirators I'd encourage the court to be precise about what we're talking about. The conspiracy that is at issue and the conspiracy that the jury found was a panels conspiracy so the co-conspirators were the companies that manufactured panels. Best Buy didn't they conspire with companies that also incorporated the panels into finished products? So those were other subsidiaries owned by the same sometimes corporate conglomerate that common ownership and control is what allows the Best Buy plaintiffs to take advantage of the royal printing exception to Illinois Brick and bring a claim under the Sherman Act because they didn't buy directly from the conspirators but that doesn't change the conduct that we're trying to ask whether what conduct and whether it can be regulated by U.S. law or not the conduct that we're looking at is still the price fix on the panels and that's the commerce that occurred outside the U.S. and is not import commerce and should be looked at under the domestic effects exception. That isn't how the conspirators looked at it when they were conspiring. I mean if you go back and you look at the minutes of the conspiracy meetings they're referring to the finished products there the distinction I think that I see with Judge Graber's car example is that this conspiracy actually understood the significance of the component as being the finished product I mean they talked about the 15 inch monitor, the notebook monitor, the television sets they were talking about the relationship of inflating the price in this component to the overall price of the finished product and indeed some of those very conspirators were going to be making that finished product So your honor I think the Judge Posner's decision from Motorola is helpful on this. Again Judge Posner noted that it's understandable that cartelists may be talking about the products that their price fixed input goes into they're admittedly trying to decide I guess what I'm trying to say is the purpose was to inflate the prices in the United States which is the largest market for these products apparently and they talked about how they would inflate those prices by inflating the price of a key component of the product. So the purpose of the conspiracy was to fix the price of the panels It may have had the effect of increasing the price of the finished products. No, it's intended effect Well, but that's where you look at the domestic effects exception No, no, the jury found that, I think question three or four, that there was a substantial intended effect to increase prices in the United States But your honor, we don't get to that issue unless you have import commerce that is directly subject to the Sherman Act and what I'm trying to again, probably inarticulately trying to explain is that the conduct that we are looking at is the sale, the agreement to fix the price of panels and whether the conspirators knew it was going to effect the price of finished products eventually They expressly referred to those products in their meetings Sure, but that doesn't change the fact that the sale of these panels That was the basis for the jury's finding But the jury found no direct substantial and reasonable foreseeable effect But they found the import exception But this now comes to the problem with the special verdict form, which the special verdict form asked whether there was or assumed that proving the sale of finished products into the U.S. was sufficient to prove import commerce Which is a legal question Exactly And your honors, I think under Shong and Motorola, the answer to that is no It's clear what the commerce is that we're trying to regulate. It was the sale of the price fixed panel And that's, in this instance that is non-import foreign commerce And so you need to then satisfy the domestic effects exception in order to apply U.S. law to that And all of the evidence Judge Board Law that you're struggling with That evidence may be relevant to the issue of whether there was a direct, substantial and reasonably foreseeable effect on U.S. commerce But that's the domestic effects exception And in this instance, the jury was asked and they said no They found no domestic effect And that's what the plea agreement went to, correct? I was surprised that we had this plea agreement with the factual basis But yet the jury found answered no to the second question as to the second exception Exactly Thank you, counsel. Your time has expired We appreciate the arguments from both counsel They've been very helpful in this challenging case And we'll let you stay up there And we'll hear the argument in the other Best Buy vs. Hand Star case We'll hear from Ms. Wick
judges: Graber, Wardlaw, Marquez